THE TOWN OF STAMFORD, appellee, *vs.* THE TOWN OF WHITING-HAM, appellant.

A person, having come to reside in a town in this state, *previous* to the passing the act of the 6th November, 1801, and continuing to reside in such town after the passing of the act, thereby gains a legal settlement *under it,* unless warned to depart such town, as therein provided.

THIS was an appeal from an order of two justices, removing one *Antis Briggs,* a pauper, from Stamford to Whitingham.

A trial was had at the March term of Bennington county court, 1826, at which sundry exceptions were taken, and which, together with the facts appearing on the trial, were finally resolved into the following *case stated,* placed upon the record by the agreement of the parties, and certified to this Court for a final decision:

On the trial of the issue in this cause, the following facts were admitted, and exceptions taken, to wit, it is admitted, that *Jesse Briggs* (father of the pauper, *Antis Briggs*) came from Massachusetts, aged 23 years, to reside in *Whitingham,* in April, 1794, and continued there till October, 1796. He then removed, with

Bennington,
January,
1827.

Stamford
*vs.*
Whitingham

his family, to *Colrain*, in Massachusetts, and remained there with his family, till March, 1801; then returned to *Whitingham* with his family, and resided there till September, 1815; then removed to *Stamford* and resided there three months; then removed to *Adams*, Massachusetts, and resided there two months; then removed with his family to *Clarksburgh*, Massachusetts, and resided there about two years; then removed in January or February, 1818, to *Whitingham*, and continued there till December, 1824.

*Antis Briggs* was born 9th November, 1800, in *Colrain* in Massachusetts, and was chargeable to *Stamford* at the time of the order of removal.

*Stamford* offered to prove, on trial, that the selectmen of *Whitingham* did, by indenture, bind out *Antis Briggs*, and *Erastus Briggs* her brother, the 6th September, 1811; that the town of *Whitingham* paid expenses for the support of *Huldah*, daughter of *Jesse Briggs*, to *Halifax*, in 1813; that the selectmen of *Whitingham* requested one *Millard*, of *Stamford*, to take care of and provide for *Antis*, before removal; that *Jesse Briggs*, when he first came to *Whitingham* in 1794, came with his father; that *Jesse Briggs* was an able bodied man and of peaceable behaviour, from 1794 to 1806, and paid taxes in *Whitingham* from 1801 to 1803; all which was objected to, and rejected by the court.

Now if the Supreme Court, upon the consideration of the facts admitted in this case, shall be of opinion that the pauper has a legal settlement in *Whitingham*, judgment shall be returned in favour of *Stamford*; if not, then in favour of *Whitingham*. And if the said Court shall be of opinion, that the evidence rejected is material to the issue, a *venire de novo* shall be awarded.

*Sheldon* and *Merrill*, for the appellee, contended, that the pauper had a derivative settlement in *Whitingham*, under her father, and was therefore duly removed. That *Jesse Briggs*, the father, having resided in Whitingham from *March*, 1801, to Sept. 1815, and not having been warned out, agreeably to the statute of the 6th of November, 1801, gained a legal settlement in said town. (*Poultney* vs. *Fairhaven, Brayt. R.* 185.) That the pauper having gained a derivative settlement in *Whitingham*, did not lose it by the removal to Massachusetts.—*Chelsea* vs. *Malden*, 4 *Mass. R.* 131.—*Townshend* vs. *Bellerica*, 10 *Mass. R.* 411. —*Canton* vs. *Bently*, 11 *Mass.* 441.—2 *N. Hamp. R.* 132.—4 *East's R.* 106.—4 *Com. Dig.* 605.

*Phelps*, for the appellant, insisted, that no settlement was gained by the pauper, under the statute of the 6th Nov. 1801.

Because, 1, The statute in question is prospective on the face of it.

Words that are used in enacting laws are to be taken and considered in their common, customary, and popular use; and no grammatical construction will be admitted to vary or control their apparent meaning,----*Swift's Dig.* 12.

*Bennington,*
*January,*
*1827.*

*Stamford*
*vs.*
*Whitingham*

2. If it were not so, it is a general rule, that statutes have no retrospect beyond the time of their enactment.: for the rule and law of parliament is, that a new statute relates to the future and not to the past.----*Cunningham's Dic. tit. Stat.*

It is a principle of universal jurisprudence, that laws, civil or criminal, must be prospective, and cannot have a retroactive effect.----*Dash* vs. *Van Kleek,* 7 *Johns. Rep.* 477, 501.

All laws should be made to commence *in futuro,* and be notified before their commencement.----*Bl. Com.* 46.

He was aware, he said, that the marginal note of the case of *Poultney* vs. *Fairhaven, Brayt.* 185, asserts as a *dictum,* "that a person residing in a town previous to the act of 1801, and continuing to reside in town after the passing of the act, may gain a settlement under that act."

Such a latitude of construction, he believed, could never be defended. This construction will give to every person who resided in a town on the 6th of Nov. 1801, a settlement in such town, without any reference to the length of time he so resides, or to the time when he removed into such town.

Now there is nothing in the act that will warrant any such idea, nor will the case decided warrant such a *dictum.* The point decided in this *case* is, that a person *removing* into a town in February, 1801, and there residing a number of years, next after the 6th of Nov. 1801, *without being warned, thereby gained a settlement for himself and family."* This, it will be seen, was the judge's charge to the jury, from which exceptions were taken. And on motion for a new trial, it is only said, that "the court confirmed the decision of the judge." No reason at all is given.

There can be but little authority in the mere opinion of the Court, founded upon no argument, and where no reason or authority is brought to confirm such opinion. Brayton's notes, in themselves, are no authority. If they can stand the test of legal scrutiny, they are well; if not, they are not law, and courts are not bound by them.

Nor is there any weight in the argument, that unless in cases like this, a settlement may be gained under the act of November 6, 1801 : no settlement at all could be gained, the former act from that day being repealed; and that the case is therefore omitted in the statute. If this were so, *Whitingham* is not to be prejudiced.

*Church,* on the same side, insisted also, that a *venire de novo* ought not to be awarded, because, he said, the evidence rejected on the trial did not tend to prove the pauper had gained a legal settlement in *Whitingham.*

It was also insisted, that the proceedings of the justices were bad, and could not be affirmed, for that it did not appear from the case, that an attested copy of the order of removal had been left with the overseer of the poor of *Whitingham,* within thirty days from the making of the order, as is required by the fifth section of the act of 1817 (*Stat.* 383, *ch.* 47, *No.* 3; *sec.* 5.)

Skinner, Ch. J. delivered the following opinion.

Bennington,
January,
1827.

Stamford
vs.
Whitingham

The exception here taken to the record, and urged as a ground for rendering judgment in favour of the appellant, namely, that it does not appear that notice of the order of removal was given by Stamford, according to the fifth section of the statute of 1817, cannot regularly be considered by the Court, as it does not appear in the case made by the parties. Had this point been made at the trial, and noted in the case, it could not have availed the party, it having been repeatedly decided by this Court, if the appeal is taken within the thirty days, (the time limited for giving the notice) a compliance with that requisition of the statute is unnecessary: by taking the appeal within the time, the appellant waives the notice.

The settlement of Jesse Briggs, father of Antis the pauper, must be her settlement, if she has any in the state, as she has gained none for herself. The inquiry then is, as to the settlement of the former. There is nothing in the case from which it appears Jesse Briggs gained any settlement in Whitingham, by his residence there from April, 1794, to October, 1796, when he removed to Massachusetts. If he has a settlement in the state, it is by reason of his residence in Whitingham, after his removal there in March, 1801, where he continued for fifteen years thereafter, and this is to be determined by a construction of the statute passed November 6, 1801. The first section of the statute of 1797, pointing out what should constitute a legal settlement, was by the act of 1801 repealed. By this latter statute, provision is made for warning strangers to depart. It also defines what shall constitute a legal settlement, and is in this respect variant from the statute of 1797. The fourth section of the statute of 1801 declares, "that all and every person coming into and residing within any town in this state, who shall not be warned agreeable to the first section of this act, within one year after he or she removes into such town, shall be deemed and adjudged to have attained a legal settlement in such town." Jesse Briggs, who removed into Whitingham in March, 1801, and might there have acquired a settlement by residence, &c. under the statute of 1797, then in force, was prevented from so doing, by the after repeal of the first section of that law, by the statute of 1801. The question then is, can he ever in any way gain a settlement in the state under the statute of 1801. It is true the question in this case arises exclusively under the fourth section, before recited; but the language of the second and third sections will admit of no more extended construction, as applicable to persons claiming a settlement by force of them, who may have removed into the state within one year prior to the passing of the law of 1801. The question now before us was directly presented and decided by the Supreme Court, in the case of Poultney vs. Fairhaven, in 1819. Although a single decision, even upon the construction of a statute, is not in all cases to have the weight of precedent, and to be treated as an authority binding upon courts thereafter, yet the construction giv-

Bennington,
January,
1827.

Stamford
vs.
Whitingham

en by a former court, in a single instance, upon the statute directing what shall constitute a legal settlement, and for the support of the poor, has rarely been departed from. No equitable considerations are presented in such case. The obligation upon towns to support paupers is matter of strict law, and it is more important the construction should be settled and uniform, (and of course operating upon all alike) than *what* that construction is, or more emphatically, that it should not fluctuate according to the opinions of succeeding judges. But if the question had never been decided, I should entertain very little doubt as to the proper construction to be given to the statute. It is insisted, that a statute must be prospective, and cannot be so construed as to give it a retrospective operation. It is not perceived how that rule bears upon the question. If we were called upon to consider any portion of the time in which *Jesse Briggs* resided in Whitingham prior to the 6th November, 1801, as a part of the year required by the statute, within which he must have been warned, to prevent his attaining a settlement, it would well apply. It is also said, that words in a statute are to be taken and considered in their common, customary and popular use. This is an approved general rule of construction, but there are also other rules by which courts are governed, not less important. The intention of the makers of the statute is to be pursued in the construction, and that may be collected from the cause or necessity of making it. Where a statute will possibly bear two constructions, that is always to be rejected which in its effects and consequences would be unjust or absurd; and where words will have a very absurd signification, if taken according to their literal, common acceptation, there it is proper to deviate from the common sense of the words, and construe them in such a manner as will deduce a rational and consistent meaning. The effect of the construction contended for by the appellant, will be to exclude all such persons as may have removed into the state within one year prior to the passing the law, and also all such, whether minors or adults, as may have been born in, or removed into the state at any former period, however remote, who had not acquired a settlement under the former statute, from ever gaining one, although they may have held the most important offices under the government, have possessed estate and paid taxes to any amount, and for any period of time. It will be readily perceived, that the effect would be to exclude a very great portion of the most valuable citizens from the privilege offered to strangers abroad, on their coming into and residing in the state.

No possible reason can be assigned, why the legislature should so have intended, and nothing will justify the belief but the most unequivocal language. The word coming, in the statute, is not of that character, but is frequently used without reference to time, whether past, present or future. It may denote the act of coming, or a state of being come.

Judgment must be for the appellee, under the rule made by the parties.

*Bennington,*
*January,*
*1827.*

*Stamford*
*vs.*
Whitingham

PRENTISS, J. I am so unfortunate as not to agree with my brethren in this case. The father of the pauper gained no settlement in Whitingham, previous to the act of 1801. By the first section of this act, authority is given to the selectmen of every town, in their discretion, to warn any person to depart the town, who *shall come* and *reside* within the same. And the form of the warning and mode of service are prescribed. In the fourth section of the same act, it is declared, "that all and every person, coming into and residing within any town in this state, who shall not be warned, agreeably to the first section of this act, within one year after he or she removes into such town, shall be deemed and adjudged to have attained a legal settlement in such town." Now, if the father of this person gained a settlement in *Whitingham*, it must be under this fourth section of the act. By the construction now adopted, if the person had come into the town one year, lacking one day, before the passing of the act, the town would have but one day in which to warn him out. It is usual to construe such acts strictly; and I do not feel authorized to introduce a new and substantive provision into the statute.

The case cited from *Brayton* is a loose note, and not entitled to much credit.

HUTCHINSON, J. concurred in the opinion delivered by the chief justice. He thought he should have made the same decision, if no construction had before been given to the statute. The decision in *Poultney* vs. *Fairhaven*, he presumed had been generally understood throughout the state, and a reversal of it at this time would cause very many removals.

Judgment for the appellee.

*O. C. Merrill, C. Sheldon* and *U. M. Robinson,* for the appellee.

*John Phelps* and *Daniel Church,* for the appellant.